ILLINOIS CENTRAL RAILROAD COMPANY *v.*
SKAGGS.

ERROR TO THE SUPREME COURT OF THE STATE OF
MINNESOTA.

No. 194.　Argued January 19, 20, 1916.—Decided January 31, 1916.

Where two employees of the carrier are necessarily working together,
as under the exigencies existing in this case, each has a reasonable
latitude in relying upon statements of the other made in the course
of and as a part of the operation, and if statements made negligently
by one result in injury of the other properly relying thereon, the
latter is not barred from recovering under the Employers' Liability
Act.

The salutary rule, that a party is not entitled to sit silent until after
verdict, and then insist that it shall be set aside because the trial
court failed to particularly specify in its charge some matter to which
its attention had not been suitably called, has not been altered by
the local statute of Minnesota under which errors in rulings and
instructions may be specified on a motion for new trial without
taking exceptions on the trial.

This court concurs in the view expressed by the state Appellate Court
to the effect that an instruction on the question of contributory

negligence of the plaintiff did not conform exactly to the proper interpretation of the Employers' Liability Act, but that as the mistake was a verbal one which would undoubtedly have been corrected had attention been called thereto at the time, which was not done, and as defendant was not prejudiced thereby, it was not error justifying reversal of the judgment.

125 Minnesota, 532, affirmed.

THE facts, which involve the construction and application of the Federal Employers' Liability Act, and the validity of a verdict and judgment recovered thereunder in a state court, are stated in the opinion.

*Mr. W. S. Horton,* with whom *Mr. Blewett Lee* was on the brief, for plaintiff in error.

*Mr. Humphrey Barton,* with whom *Mr. John H. Kay* was on the brief, for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

This is a writ of error to review a judgment recovered under the Federal Employers' Liability Act. There is no question but that the defendant in error, Fulton M. Skaggs, was injured while he was engaged in interstate commerce in the course of his employment by the plaintiff in error. It is contended that the state court erred in its application of the statute to the facts, both with respect to the conditions of liability and the measure of damages.

Skaggs had been employed by the Company for about four years, first in connection with the building and repair of bridges, and then, for about two years, as a locomotive fireman. A few days before the accident he began work as a brakeman on a freight train, his first run being from Freeport to Clinton, Illinois, on January 10, 1913. It was on the return trip to Freeport, on January 13, 1913, that he was injured. The crew consisted of the conductor, the engineer, the fireman, the rear brakeman, named Buchta,

and Skaggs who was head (or forward) brakeman. There was evidence that Buchta was assigned to the position of rear breakman because of his greater experience. The train reached Amboy, an intermediate station, about two o'clock A. M. It was a dark, cold night. There were fifteen cars in the train, two of which were to be left at Amboy. The train was cut immediately behind these two cars; the engine with the forward string of cars proceeded northward on the main track to a point beyond a switch connecting with a passing track to the west; and the two cars were then pushed back on the passing track and cut off. The engine with the remaining cars then re-turned to the main track and backed down in the direction of the cars which had been left standing on that track. After backing a short distance, the engine was stopped, was uncoupled, and was moved forward alone across the switch leading to the passing track, the purpose being to return to the passing track and from thence to proceed to a further track to the west in order to pick up certain other cars which were to be put into the train. There had not been left, however, a safe clearance for the engine, and, when the engine backed to the passing track, Skaggs who was riding on the right side at the rear of the tender was hit by the end of the foremost car left on the main track, was knocked to the ground and was run over, this being the injury of which he complains.

While there is little or no dispute as to these facts, there is a conflict of testimony as to the relation of Buchta, the other brakeman, to the occurrence. Omitting various details of the movements which for the present purpose need not be considered, and taking the testimony of Skaggs which the jury was at liberty to believe, these facts appear: When, after leaving the two cars on the passing track, the engine with the remaining string of cars returned to the main track and backed down, Skaggs gave the signal to stop, repeating a signal which was received, as he

supposed, from the conductor. At that time Buchta was somewhere in the yard (he had been lining up switches for the intended movements) but Skaggs did not see him when the cars were stopped. Skaggs then went to the depot to ascertain the meaning of the signal and was told by the conductor that it was necessary to pick up certain other cars. Returning to the engine, he attempted to uncouple it from the right-hand side but found this difficult, and Buchta who was then on the opposite side effected the uncoupling and said "Go ahead." On Skaggs' signal, the engine started forward; but Skaggs did not know whether the cars were left so as to give sufficient clearance for an engine going into the passing track and asked Buchta as to this. He did not receive a satisfactory answer; he stopped the engine, got off, and again asked Buchta who replied: "They are clear a mile, go ahead, and if we don't get out of here the sixteen-hour law will catch us before we get into Freeport." Skaggs at that time was on the track at the rear of the tender and not more than a car's length from the standing car. He then got on the engine, rode up to the switch, threw the switch, gave the back-up signal, stepped on the corner of the tender and was looking back for any signal that might be given by the other brakeman when he was caught between the rear right-hand side of the tender and the end of the standing car, as already stated.

It is contended that the state court erred in permitting a recovery under the Federal statute for the reason that the injury resulted from Skaggs' own act, or from an act in which he participated. The company, it is said, 'cannot be negligent to an employee whose failure of duty and neglect produced the dangerous condition.' It may be taken for granted that the statute does not contemplate a recovery by an employee for the consequences of action exclusively his own; that is, where his injury does not result in whole or in part from the negligence of any of the officers, agents or employees of the employing carrier or

by reason of any defect or insufficiency, due to its negligence, in its property or equipment.  April 22, 1908, 35 Stat. 65.  But, on the other hand, it cannot be said that there can be no recovery simply because the injured employee participated in the act which caused the injury. The inquiry must be whether there is neglect on the part of the employing carrier, and, if the injury to one employee resulted 'in whole or in part' from the negligence of any of its other employees, it is liable under the express terms of the act.  That is, the statute abolished the fellow-servant rule.  If the injury was due to the neglect of a co-employee in the performance of his duty, that neglect must be attributed to the employer; and if the injured employee was himself guilty of negligence contributing to the injury the statute expressly provides that it "shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."  See *Second Employers' Liability Cases*, 223 U. S. 1, 49, 50; *Seaboard Air Line* v. *Tilghman*, 237 U. S. 499, 501.  We think that the argument for the plaintiff in error overlooks the inferences of fact which the jury was entitled to draw. Thus, the jury could properly regard the two brakemen as assisting each other in the movement in question. Such assistance was certainly appropriate, if not absolutely necessary.  The very purpose of having two brakemen was not to put upon either the entire responsibility. Working together under the exigencies of such operations, particularly when conducted in the night time, it was manifestly contemplated that the one brakeman would supplement the other and not be compelled at the peril of his rights personally to examine what the other did or the basis of the reports the other gave.  Each had a reasonable latitude in relying upon the statements of the other made in the course of the operation and as a part of it.  The Supreme Court of the State said: "It was

a very dark night, and evidently there was necessity for haste. If plaintiff's story is true, Buchta was in a position to know about clearance, while plaintiff was not; and we are unable to say plaintiff had not the right to rely upon his statement in regard thereto." In this we find no error. When the engine was uncoupled, Skaggs was on the right-hand side, while Buchta was on the other side,—the side of the passing track—a better place to judge the clearance. The fact that Skaggs asked his questions is itself not without significance. These questions indicated doubt on Skaggs' part, while Buchta's reply showed certainty on his. It was plainly permissible to infer from the testimony that the two men were not in positions of equal advantage, and Skaggs was entitled to the exercise of reasonable care on the part of Buchta in observing and reporting the position of the cars. As there was evidence upon which it could be found that Buchta was negligent, and that thereby injury resulted to Skaggs, it cannot be said that the recovery in this aspect of the case was contrary to the statute.

But it is urged that the trial court erred in its instructions to the jury. After stating that if any employee "was at the time of this accident negligent in the performance of his duty, which negligence was the direct cause of the injury sustained by the plaintiff, then the defendant . . . would be liable for that negligence," and after referring to the "direct conflict of testimony" with respect to what was said and done by Buchta, the trial court charged as follows: "Did the employee Buchta fail to exercise that ordinary and reasonable care which a prudent person would have exercised under the circumstances existing at that time? If he did fail to exercise such ordinary and reasonable care, then he would be guilty of negligence, and that negligence in this case would be the negligence of the defendant railway company. You must determine this question of fact from all of

the testimony in the case." It was added, in substance, that if Buchta did not fail to exercise reasonable care the plaintiff was not entitled to recover. It is contended that the trial court erred in failing to qualify the instruction quoted, and other statements to the same effect, by reference to what Skaggs himself did, knew, or was in a position to know. But in view of the state of the testimony, and the point to which the court's instruction was addressed, we cannot say that it was in itself erroneous. If the plaintiff in error desired any addition, amplification or qualification in order to present its point of view to the jury it should have made appropriate request therefor. The record does not show that the plaintiff in error either objected at the time to any statement made by the court to the jury or that it made any request whatever for instructions. While under the local statute (General Statutes, Minnesota, § 7830), the plaintiff in error was permitted (without taking exceptions at the trial) to specify upon a motion for a new trial alleged errors in the rulings or instructions of the trial court, we do not find that this statute alters the salutary rule that a party is not entitled to sit silent until after the verdict and then insist that it shall be set aside because of a failure on the part of the trial court particularly to specify in its charge some matter to which its attention had not been suitably called. *State* v. *Zempel,* 103 Minnesota, 428, 429; *Waligora* v. *St. Paul Foundry Co.,* 107 Minnesota, 554, 559; *Sassen* v. *Haegle,* 125 Minnesota, 441; *State* v. *Sailor,* 153 N. W. Rep. (Minn.) 271; *Smith* v. *Great Northern Ry. Co.,* 153 N. W. Rep. (Minn.) 513. This, also, is a sufficient answer to the complaint of the failure of the trial court to charge the jury with respect to assumption of risk. There was no request for any instruction upon this point. So far as these criticisms are concerned, we are unable to say that any asserted Federal right was denied by the state court.

The remaining question is with respect to the instructions of the trial court on the subject of contributory negligence. In the course of these the court fell into the error of saying that, if Skaggs was negligent, "a comparative amount, depending upon the ratio of his negligence to the negligence of the defendant, would be considered by you" (the jury); and, again, that the jury should "take into consideration his negligence in comparison with the negligence of the defendant." But the court read the applicable provision of the statute to the jury and also said: "The design of this statute seems to be to place the responsibility for negligence in all cases just where it belongs, and to make everybody who is responsible for negligence which produces injury or an accident responsible for that part of it and to the extent to which they contributed to it, and so the law provides that contributory negligence does not bar a recovery, but that the damages to which one is entitled are to be reduced in proportion as his own negligence contributed to bring about the injury. That is, in a case like this, if it should be found that both parties were to blame, that both were negligent, both the defendant and the plaintiff, then the defendant company is to be responsible to the extent to which it was to blame and the plaintiff would be responsible himself to the extent to which he was to blame." And no request was made for a correction of the first-mentioned parts of the charge. It was recognized by the Supreme Court of the State that those parts failed to conform to the correct interpretation of the statutory rule as defined in *Norfolk & Western Rwy.* v. *Earnest,* 229 U. S. 114, 122, and the court quoted what we there said, as follows: "But for the use in the second instance of the additional words 'as compared with the negligence of the defendant' there would be no room for criticism. Those words were not happily chosen, for to have reflected what the statute contemplates they should have read 'as com-

pared with the combined negligence of himself and the defendant.' We say this because the statutory direction that the diminution shall be 'in proportion to the amount of negligence attributable to such employee' means, and can only mean, that, where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both. . . . Not improbably the mistake in the instruction was purely verbal and would have been promptly corrected had attention been specially called to it, and possibly it was not prejudicial to the defendant."

The state court concluded that 'upon the whole instruction no prejudice to defendant resulted.' And in this view we concur.

*Judgment affirmed.*